FILED
IN CLERKS OFFICE
2026 AUG 18 P 2:53
U.S. DISTRICT COURT
DISTRICT OF MASS.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Richkaard Verrier,<br>Plaintiff,<br><br>v.<br><br>Equifax Information Services LLC,<br>Defendant. | Civil Action No.:<br><br><br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Richkaard Verrier is a thirty-one-year-old resident of Quincy, Massachusetts who has been working to understand and repair his credit standing. Like millions of Americans, he exercised his federal right to request a copy of the complete file that Equifax Information Services, LLC maintains about him, expecting to receive a clear, accurate, and complete picture of every data point his creditors had reported and that Equifax had stored. What he received on August 22, 2025 was something far less: a truncated, field-stripped disclosure with hundreds of missing data points, a static placeholder date repeated verbatim across nearly two years of history on every one of his active student loan accounts, and a balance that exceeded the account's own credit limit on the very document that reported it. Rather than a disclosure that allowed him to verify the accuracy of his financial history, he received a document that left him unable to check

whether the delinquencies on his file were correctly recorded, whether deferment periods were accurately notated, or whether the payment history reported against him was true.

When Mr. Verrier opened the Equifax disclosure and began comparing it account by account against his own records, the omissions were immediate and unmistakable. Every one of his eleven active Department of Education student loan accounts showed no Actual Payment Amount in any of the twenty-two populated rows of its 24-Month History table, and the Last Payment Date in every one of those rows was frozen at a single date, August 8, 2023, repeated without change across nearly two years of history. His open Capital One credit card account showed a balance of $4,120 against a stated credit limit of $3,500, with no explanatory notation. The fields for Date of Last Activity and, on his currently-delinquent accounts, Date Major Delinquency First Reported were blank throughout. This was not a complete disclosure.

The scale and pattern of the omissions confirm what is otherwise difficult to attribute to accident. Across the accounts detailed below, Equifax's own disclosure omits no fewer than 378 individual data fields that federal law required it to disclose, and separately repeats a single, non-updating Last Payment Date across 242 rows spanning eleven different student loan accounts. A date does not stay frozen for nearly two years across eleven separate accounts by chance. Two federal courts, in orders issued within the last several months in cases against this same Defendant on closely analogous facts, have already held that a disclosure omitting payment history and related account data states a claim under 15 U.S.C. § 1681g(a)(1) sufficient to survive Equifax's dispositive motions. See Stafford v. Trans Union, LLC, No. 4:25-CV-00921-JDK, 2025 WL (E.D. Tex. Nov. 17, 2025) (Report and Recommendation denying Equifax's motion to dismiss); Blevins v. Equifax Info. Servs., LLC, No. 25-cv-23481-BLOOM/Elfenbein (S.D. Fla. Dec. 29, 2025) (order denying Equifax's motion for judgment on the pleadings).

Federal law is unambiguous. The Fair Credit Reporting Act, 15 U.S.C. § 1681g(a)(1), requires Equifax to clearly and accurately disclose to a consumer, upon request, all information in the consumer's file at the time of the request. The Federal Trade Commission put Equifax and every other nationwide consumer reporting agency on specific written notice of this obligation more than twenty-five years ago: a CRA that withholds data fields from a consumer's file disclosure while providing them to third-party creditors does not technically comply with Section 609 of the FCRA. FTC Advisory Opinion to Katrina Darcy (June 30, 2000). Equifax has continued transmitting complete payment-history data to creditors who pay for access, while simultaneously delivering a stripped-down disclosure to the very consumer the FCRA was enacted to protect.

Plaintiff Richkaard Verrier brings this action to recover actual damages for the harm caused by Equifax's incomplete disclosure, to recover statutory and punitive damages for Equifax's willful violation of clearly established law, and to obtain a complete and corrected file disclosure that contains all information Equifax maintains on him, disclosed clearly and accurately as the FCRA has always required.

## II.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1681p, which vests jurisdiction in any appropriate United States district court without regard to the amount in controversy, and pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in Quincy, Massachusetts, the file disclosure that forms the basis of this action was transmitted to Plaintiff in this district, and the injuries described herein were sustained in this district.

**III.**

**PARTIES**

3. Plaintiff Richkaard Verrier is a natural person residing at 790 Willard St Apt 101, Quincy, Massachusetts 02169. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

4. Defendant Equifax Information Services LLC ("Equifax") is a Georgia limited liability company with its principal place of business at 1550 Peachtree Street NW, Atlanta, Georgia 30309. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f), in that, for monetary fees and on a cooperative nonprofit basis, it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information for the purpose of furnishing consumer reports to third parties, using means or facilities of interstate commerce. Defendant's registered agent in the Commonwealth of Massachusetts may be located through the Massachusetts Secretary of State's corporate database.

**IV.**

**FACTUAL ALLEGATIONS**

**A. Credit Report Overview**

5. On August 22, 2025, Equifax provided Plaintiff with a consumer file disclosure bearing Confirmation Number 5234549766. The disclosure contained twenty credit accounts and spanned twenty-eight pages.

6. Section 1681g(a)(1) of the FCRA requires every consumer reporting agency to "clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request." The term "file" is defined by 15 U.S.C. § 1681a(g) as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored."

7. As detailed below, Equifax's August 22, 2025 disclosure failed to clearly and accurately disclose all information in Plaintiff's file, omitting no fewer than 378 individual data fields that Equifax was required by statute to disclose, in addition to the static, non-updating date entries described in Paragraph 29 below.

**<u>B. Incomplete Disclosure: Account-by-Account Inventory of Missing Fields</u>**

8. The following nineteen accounts appear in Plaintiff's August 22, 2025 Equifax disclosure with one or more of the field omissions described below. A twentieth account on the disclosure, a Cap1/Kohls Department Store charge account closed with a zero balance since 2016, carries no 24-Month History table and is not included in this inventory. A complete, row-by-row breakdown of every field described in this section is attached as Exhibit D.

9. Capital One Bank USA NA, account ending *1177 (open credit card, balance $4,120, credit limit $3,500, status 60-89 Days Past Due): The Actual Payment Amount field is blank in all twenty-four rows of the 24-Month History (August 2023 through July 2025).

The Date of Last Activity field is blank. The Date Major Delinquency First Reported field is blank.

10. Department of Education, account ending *7031 (education loan, balance $25,529, status Over 120 Days Past Due): The Actual Payment Amount field is blank in all twenty-two populated rows of the 24-Month History (August 2023 through June 2025). The Last Payment Date field in every one of those twenty-two rows reads "08/08/2023," an identical date that does not change across nearly two years of history. Three of the twenty-two rows (September 2024, May 2024, and January 2024) additionally carry Narrative Code 088 deferment notation and show no Scheduled Payment Amount. The Date of Last Activity field is blank. The Date Major Delinquency First Reported field is blank.

11. Department of Education, account ending *6232 (education loan, balance $5,171, status Over 120 Days Past Due): The Actual Payment Amount field is blank in all twenty-two populated rows of the 24-Month History (August 2023 through June 2025). The Last Payment Date field in every one of those twenty-two rows reads "08/08/2023," an identical date that does not change across nearly two years of history. Three of the twenty-two rows (September 2024, May 2024, and January 2024) additionally carry Narrative Code 088 deferment notation and show no Scheduled Payment Amount. The Date of Last Activity field is blank. The Date Major Delinquency First Reported field is blank.

12. Department of Education, account ending *6132 (education loan, balance $2,685, status Over 120 Days Past Due): The Actual Payment Amount field is blank in all twenty-two populated rows of the 24-Month History (August 2023 through June 2025). The Last

Payment Date field in every one of those twenty-two rows reads "08/08/2023," an identical date that does not change across nearly two years of history. Three of the twenty-two rows (September 2024, May 2024, and January 2024) additionally carry Narrative Code 088 deferment notation and show no Scheduled Payment Amount. The Date of Last Activity field is blank. The Date Major Delinquency First Reported field is blank.

13. Department of Education, account ending *0831 (education loan, balance $11,944, status Over 120 Days Past Due): The Actual Payment Amount field is blank in all twenty-two populated rows of the 24-Month History (August 2023 through June 2025). The Last Payment Date field in every one of those twenty-two rows reads "08/08/2023," an identical date that does not change across nearly two years of history. Three of the twenty-two rows (September 2024, May 2024, and January 2024) additionally carry Narrative Code 088 deferment notation and show no Scheduled Payment Amount. The Date of Last Activity field is blank. The Date Major Delinquency First Reported field is blank.

14. Department of Education, account ending *7532 (education loan, balance $5,190, status Over 120 Days Past Due): The Actual Payment Amount field is blank in all twenty-two populated rows of the 24-Month History (August 2023 through June 2025). The Last Payment Date field in every one of those twenty-two rows reads "08/08/2023," an identical date that does not change across nearly two years of history. Three of the twenty-two rows (September 2024, May 2024, and January 2024) additionally carry Narrative Code 088 deferment notation and show no Scheduled Payment Amount. The

Date of Last Activity field is blank. The Date Major Delinquency First Reported field is blank.

15. Department of Education, account ending *8931 (education loan, balance $12,439, status Over 120 Days Past Due): The Actual Payment Amount field is blank in all twenty-two populated rows of the 24-Month History (August 2023 through June 2025). The Last Payment Date field in every one of those twenty-two rows reads "08/08/2023," an identical date that does not change across nearly two years of history. Three of the twenty-two rows (September 2024, May 2024, and January 2024) additionally carry Narrative Code 088 deferment notation and show no Scheduled Payment Amount. The Date of Last Activity field is blank. The Date Major Delinquency First Reported field is blank.

16. Department of Education, account ending *7632 (education loan, balance $2,723, status Over 120 Days Past Due): The Actual Payment Amount field is blank in all twenty-two populated rows of the 24-Month History (August 2023 through June 2025). The Last Payment Date field in every one of those twenty-two rows reads "08/08/2023," an identical date that does not change across nearly two years of history. Three of the twenty-two rows (September 2024, May 2024, and January 2024) additionally carry Narrative Code 088 deferment notation and show no Scheduled Payment Amount. The Date of Last Activity field is blank. The Date Major Delinquency First Reported field is blank.

17. Department of Education, account ending *0136 (education loan, balance $3,449, status Over 120 Days Past Due): The Actual Payment Amount field is blank in all twenty-two populated rows of the 24-Month History (August 2023 through June 2025). The Last

Payment Date field in every one of those twenty-two rows reads "08/08/2023," an identical date that does not change across nearly two years of history. Three of the twenty-two rows (September 2024, May 2024, and January 2024) additionally carry Narrative Code 088 deferment notation and show no Scheduled Payment Amount. The Date of Last Activity field is blank. The Date Major Delinquency First Reported field is blank.

18. Department of Education, account ending *0036 (education loan, balance $3,958, status Over 120 Days Past Due): The Actual Payment Amount field is blank in all twenty-two populated rows of the 24-Month History (August 2023 through June 2025). The Last Payment Date field in every one of those twenty-two rows reads "08/08/2023," an identical date that does not change across nearly two years of history. Three of the twenty-two rows (September 2024, May 2024, and January 2024) additionally carry Narrative Code 088 deferment notation and show no Scheduled Payment Amount. The Date of Last Activity field is blank. The Date Major Delinquency First Reported field is blank.

19. Department of Education, account ending *5129 (education loan, balance $6,277, status Over 120 Days Past Due): The Actual Payment Amount field is blank in all twenty-two populated rows of the 24-Month History (August 2023 through June 2025). The Last Payment Date field in every one of those twenty-two rows reads "08/08/2023," an identical date that does not change across nearly two years of history. Three of the twenty-two rows (September 2024, May 2024, and January 2024) additionally carry Narrative Code 088 deferment notation and show no Scheduled Payment Amount. The

Date of Last Activity field is blank. The Date Major Delinquency First Reported field is blank.

20. Department of Education, account ending *5229 (education loan, balance $2,557, status Over 120 Days Past Due): The Actual Payment Amount field is blank in all twenty-two populated rows of the 24-Month History (August 2023 through June 2025). The Last Payment Date field in every one of those twenty-two rows reads "08/08/2023," an identical date that does not change across nearly two years of history. Three of the twenty-two rows (September 2024, May 2024, and January 2024) additionally carry Narrative Code 088 deferment notation and show no Scheduled Payment Amount. The Date of Last Activity field is blank. The Date Major Delinquency First Reported field is blank.

21. Sallie Mae, account ending *1731 (education loan, status Charge Off, Charge Off Amount $12,167): The Actual Payment Amount field is blank in thirteen of the twenty-four rows of the 24-Month History. The Date of Last Activity field is blank.

22. Sallie Mae, account ending *5825 (education loan, status Charge Off, Charge Off Amount $18,513): The Actual Payment Amount field is blank in twelve of the twenty-four rows of the 24-Month History. The Date of Last Activity field is blank.

23. Sallie Mae, account ending *7674 (education loan, status Charge Off, Charge Off Amount $41,955): The Actual Payment Amount field is blank in nine of the twenty-four rows of the 24-Month History. The Date of Last Activity field is blank.

24. Sallie Mae, account ending *3011 (education loan, status Charge Off, Charge Off Amount $12,188): The Actual Payment Amount field is blank in fourteen of the twenty-four rows of the 24-Month History. The Date of Last Activity field is blank.

25. Workers Credit Union, account ending *6693 (auto loan, status Charge Off, Charge Off Amount $10,197): The Actual Payment Amount field is blank in eight of the twenty-four rows of the 24-Month History. The Date of Last Activity field is blank.

26. Capital One Bank USA NA, account ending *8919 (closed credit card, status Charge Off, Charge Off Amount $3,220, balance $3,220, credit limit $2,300): The Actual Payment Amount field is blank in all twenty-four rows of the 24-Month History. The Date of Last Activity field is blank.

27. Ally Financial, account ending *4830 (closed auto, status Pays As Agreed): The 24-Month History contains a single populated row, for July 2024. The Actual Payment Amount field is blank in that row. The Date of Last Activity field is blank.

28. In total, Plaintiff's August 22, 2025 Equifax file disclosure omits no fewer than 347 Actual Payment Amount entries, a blank Date of Last Activity field on all nineteen accounts listed above, and a blank Date Major Delinquency First Reported field on the twelve accounts (the Capital One *1177 account and all eleven Department of Education accounts) that were currently delinquent but not yet charged off, for a combined total of no fewer than 378 individual missing data fields. See Exhibit D (itemized field-by-field inventory).

29. The identical Last Payment Date of "08/08/2023" appears in every one of the twenty-two populated rows of each of the eleven Department of Education accounts, for a total of 242 rows across those eleven accounts in which the date does not change even as the reported balance changes from row to row. A date field that does not change across nearly two years of account history while the balance on that same row continues to climb is not a disclosure of information; it is the absence of information masked by a

static value. This pattern is uniform across all eleven of Plaintiff's Department of Education accounts and confirms a systemic data policy, not isolated error.

30. On information and belief, Equifax maintains the complete payment history data and updated Last Payment Date entries in its internal databases, and transmits that complete data to third-party creditors who purchase consumer reports; the information is withheld only from Plaintiff's own file disclosure. Information a consumer reporting agency furnishes, or might furnish, to third parties in a consumer report must also be disclosed to the consumer upon request. See Cortez v. Trans Union, LLC, 617 F.3d 688, 711-12 (3d Cir. 2010) (rejecting a CRA's argument that data it maintains and reports to third parties escapes the consumer-disclosure requirement of 15 U.S.C. § 1681a(g)).

**<u>C. Per Se Inaccuracies</u>**

31. The August 22, 2025 Equifax disclosure reports the Capital One Bank USA NA account ending *1177 with a current balance of $4,120 against a stated credit limit of $3,500. A reported balance that exceeds the account's own credit limit on an open, currently-reporting account is a per se inaccuracy. No permissible account state produces a balance higher than a credit limit without an explanatory notation, and none appears here.

32. The August 22, 2025 Equifax disclosure also reports the closed Capital One Bank USA NA account ending *8919, status Charge Off, with a balance of $3,220 frozen against a stated credit limit of $2,300 across all six months in which the account shows no further payment activity. While post-charge-off balances can permissibly reflect accrued interest or fees in excess of the original limit, Equifax's disclosure contains no notation

explaining the $920 discrepancy, leaving the consumer unable to determine whether the reported figure is accurate.

**D. Delinquency Reporting During Deferment Periods**

33. Each of the eleven active Department of Education accounts carries Narrative Code 088 -- "Student Loan - Payment Deferred" -- for the months September 2024, May 2024, and January 2024. Yet those same accounts show escalating delinquency notations (90 days, 120 days, 150 days, and 180 days past due) in the payment-history grid for the months surrounding those deferment-coded periods. Equifax simultaneously notates Plaintiff's student loans as deferred and as delinquent without disclosing the Actual Payment Amount for any month, making it impossible for Plaintiff or any reviewing creditor to determine whether the delinquency notations are consistent with the deferment status or whether they are erroneously applied. This materially misleading presentation violates 15 U.S.C. § 1681e(b).

**E. Dispute History**

34. The August 22, 2025 Equifax disclosure shows Narrative Code 167 -- "Consumer Disputes After Resolution" -- on two Sallie Mae accounts: account ending *5825 (Code 167 present on all twenty-four rows of the 24-Month History) and account ending *7674 (Code 167 present on all twenty-four rows of the 24-Month History). Code 022 -- "Consumer Disputes - Reinvestigation in Process" -- appears on the Ally Financial account ending *4830, together with Code 167.

35. Pursuant to 15 U.S.C. § 1681i, Equifax was obligated, upon receipt of Plaintiff's prior dispute, to conduct a reasonable reinvestigation, to delete or modify unverifiable information, and to note disputed status in subsequent reports furnished to third parties. Equifax's continued reporting of Narrative Code 167 -- indicating a consumer dispute that was purportedly resolved by the data furnisher rather than independently verified by Equifax -- is consistent with a reinvestigation process that treats the furnisher's response as dispositive without independent evaluation.

**F. Systemic Reinvestigation Failure**

36. The presence of Code 167 across every row of the 24-Month History for the Sallie Mae *5825 and *7674 accounts, and the presence of Code 022 and Code 167 on the Ally Financial *4830 account, is consistent with Equifax having transmitted the disputed information to third parties without resolving the disputed status in a manner that satisfies the statute. On information and belief, Equifax's reinvestigation consisted of forwarding Plaintiff's dispute to the data furnisher and accepting the furnisher's response without independently evaluating the information, which does not constitute a reasonable reinvestigation under 15 U.S.C. § 1681i(a)(1)(A). See Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997).

**G. Third-Party Dissemination and Article III Standing**

37. Plaintiff's August 22, 2025 Equifax file disclosure does not contain any hard inquiries. The inquiry section lists only soft inquiries, including periodic account review pulls by Capital One National Association and internal Equifax entity pulls by Equifax

Information Services, Equifax TALX, Equifax Inc., and Equifax DIT. These internal entity pulls confirm that Plaintiff's file was active, maintained, and accessed on an ongoing basis as recently as August 22, 2025.

38. Plaintiff suffered concrete informational injury from the receipt of an incomplete file disclosure. He was denied the information that 15 U.S.C. § 1681g(a)(1) entitled him to receive, specifically the Actual Payment Amount fields, the accurate Last Payment Date entries, and the complete payment history data that Equifax withheld from his consumer disclosure while maintaining it internally for use in third-party reports. The deprivation of a statutory right to receive accurate information constitutes a concrete injury in fact. See TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2204 (2021) (recognizing that failure to disclose information the consumer was entitled to receive presents a concrete informational injury).

39. As a direct result of receiving an incomplete file disclosure, Plaintiff was unable to verify the accuracy of the delinquency notations on his eleven Department of Education accounts, his four Sallie Mae charge-off accounts, his Workers Credit Union auto account, and his two Capital One credit card accounts. He was unable to determine whether the balances reported against him were correctly calculated. He was unable to assess whether the escalating delinquency notations during deferment periods were legitimate. This inability to evaluate the accuracy of his own credit file, the precise harm Congress enacted § 1681g to prevent, constitutes actual injury.

**H. Willfulness**

40. The FTC Advisory Opinion to Katrina Darcy (June 30, 2000) placed all nationwide consumer reporting agencies on specific notice more than twenty-five years ago that withholding data fields from a consumer's own file disclosure while providing that same data to third-party creditors violates 15 U.S.C. § 1681g(a)(1). Defendant's continued operation of a disclosure policy that systematically omits Actual Payment Amount data, freezes Last Payment Date fields, and blanks Date of Last Activity across virtually every account is objectively unreasonable under Safeco Insurance Co. of America v. Burr, 551 U.S. 47, 69 (2007).

41. The identical static date of "08/08/2023" appearing across all eleven Department of Education accounts and within each account across twenty-two consecutive rows, together with the uniformly blank Actual Payment Amount columns across the same eleven accounts and both Capital One accounts, confirms that these omissions result from a deliberate, uniform data policy rather than isolated clerical error. A defendant's failure to follow its own stated data practices across a uniform pattern of accounts supports a finding of willfulness. See Williams v. First Advantage LNS Screening Solutions, Inc., 947 F.3d 735, 745 (11th Cir. 2020).

42. The failure to implement any automated data-integrity comparison of reported balance against stated credit limit before publishing a consumer report, resulting in a balance of $4,120 being reported against a $3,500 credit limit on an open account with no explanatory notation, reflects the absence of any basic quality-control mechanism and is objectively unreasonable under Safeco, 551 U.S. at 69.

43. Two federal courts have already declined to dismiss materially indistinguishable § 1681g(a)(1) claims against this same Defendant. In Stafford v. Trans Union, LLC, No.

4:25-CV-00921-JDK (E.D. Tex. Nov. 17, 2025), the magistrate judge recommended denial of Equifax's motion to dismiss a claim that Equifax's disclosure omitted account numbers, account information, and payment history that Equifax furnished to third parties. In Blevins v. Equifax Information Services, LLC, No. 25-cv-23481-BLOOM/Elfenbein (S.D. Fla. Dec. 29, 2025), the district court denied Equifax's motion for judgment on the pleadings on the same theory, holding that a plaintiff need not plead a separate inaccuracy to state a claim under § 1681g(a)(1). Equifax's continued use of the same disclosure practices after receiving that notice is further evidence of willfulness.

**I. Actual Damages**

44. As a direct and proximate result of Equifax's violations described herein, Plaintiff has suffered actual damages including: (a) emotional distress and frustration arising from his inability to understand and verify the accuracy of his own credit file; (b) impaired creditworthiness caused by inaccurate balance-to-limit reporting that overstates his risk profile to any creditor reviewing his file; (c) lost credit opportunities and the inability to obtain credit on favorable terms due to inaccurate and incomplete reporting; (d) the inability to verify or challenge derogatory notations on more than a dozen accounts because Equifax withheld the payment data necessary to evaluate their accuracy; and (e) time, effort, and resources expended in attempting to understand and address the deficiencies in his file disclosure.

## V.

## CAUSES OF ACTION

**COUNT I**

**Violation of 15 U.S.C. § 1681g(a)(1) -- Incomplete File Disclosure**

45. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

46. Section 1681g(a)(1) of the FCRA provides that every consumer reporting agency shall, upon request, clearly and accurately disclose to the consumer "[a]ll information in the consumer's file at the time of the request," with the sole exception that Social Security numbers may be truncated upon request by the consumer.

47. On August 22, 2025, Plaintiff submitted a request for his consumer file disclosure, and Equifax responded with a disclosure bearing Confirmation Number 5234549766. That disclosure failed to clearly and accurately disclose all information in Plaintiff's file at the time of the request.

48. Specifically, the August 22, 2025 disclosure omitted the Actual Payment Amount in all twenty-four rows of the Capital One *1177 account history; in twenty-two rows of each of the eleven active Department of Education accounts; in thirteen rows of the Sallie Mae *1731 account; in twelve rows of the Sallie Mae *5825 account; in nine rows of the Sallie Mae *7674 account; in fourteen rows of the Sallie Mae *3011 account; in eight rows of the Workers Credit Union *6693 account; and in all twenty-four rows of the Capital One *8919 account.

49. The disclosure further presented a static, non-updating date -- "08/08/2023" -- as the Last Payment Date for all twenty-two populated rows of the 24-Month History for each of the

eleven active Department of Education accounts, constituting a failure to disclose accurate date information that Equifax maintained in its internal files.

50. The Date of Last Activity field was blank on all nineteen accounts described in Paragraphs 9 through 20 above. The Date Major Delinquency First Reported field was blank on the twelve accounts that were currently delinquent but not yet charged off. These fields reflect data that furnishers report to Equifax and that Equifax is required to disclose to the consumer upon request.

51. In total, the August 22, 2025 disclosure omitted no fewer than 378 individual data fields from Plaintiff's consumer file, leaving Plaintiff unable to verify the accuracy of derogatory notations on twelve accounts, to assess balance-to-limit ratios correctly, or to evaluate the consistency of deferment and delinquency notations. See Alexander v. Equifax Info. Servs., LLC, No. 2:17-cv-00362, 2018 WL 3025939 (D. Nev. June 18, 2018) ("[t]he operative question under § 1681g is whether a disclosure is unclear such that the consumer cannot determine the accuracy of the information").

52. On information and belief, Equifax maintained all of the withheld data in its internal consumer file on Plaintiff at the time of the August 22, 2025 request, and transmitted that complete data to third-party purchasers of Plaintiff's consumer report. See Cortez v. Trans Union, LLC, 617 F.3d 688, 711-12 (3d Cir. 2010). The FTC Advisory Opinion to Katrina Darcy (June 30, 2000) placed Equifax on specific notice that this practice does not technically comply with Section 609 of the FCRA. Equifax's conduct was therefore willful within the meaning of 15 U.S.C. § 1681n, as it was objectively unreasonable in light of clearly established law. Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 69 (2007).

53. The systemic and uniform nature of the omissions, identical missing Actual Payment Amount columns across the eleven Department of Education accounts and both Capital One accounts, and a static frozen date replicated twenty-two times across each of those eleven accounts, confirms that the failure was the product of deliberate uniform data policy, not isolated error. See Williams v. First Advantage LNS Screening Solutions, Inc., 947 F.3d 735, 745 (11th Cir. 2020). Two courts have already declined to dismiss the same theory against this Defendant on comparable facts. Stafford v. Trans Union, LLC, No. 4:25-CV-00921-JDK (E.D. Tex. Nov. 17, 2025); Blevins v. Equifax Info. Servs., LLC, No. 25-cv-23481-BLOOM/Elfenbein (S.D. Fla. Dec. 29, 2025).

54. As a result of Equifax's willful and/or negligent violations of 15 U.S.C. § 1681g(a)(1), Plaintiff is entitled to: (a) actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1); (b) statutory damages of not less than $100 and not more than $1,000 per willful violation pursuant to 15 U.S.C. § 1681n(a)(1)(A); (c) punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and (d) costs of this action pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2).

## COUNT II

### Violation of 15 U.S.C. § 1681e(b) -- Per Se Inaccurate Reporting

55. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

56. Section 1681e(b) of the FCRA requires that whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum

possible accuracy of the information concerning the individual about whom the report relates.

57. The August 22, 2025 Equifax disclosure reports the Capital One Bank USA NA account ending *1177 as having a current balance of $4,120 against a credit limit of $3,500. A balance of $4,120 exceeds the stated credit limit of $3,500 by $620. No consumer account held in good standing carries a balance exceeding its credit limit without penalty notations, and no such notations adequately explain the discrepancy here. The reporting of a balance that exceeds the account's own credit limit is a per se inaccuracy under 15 U.S.C. § 1681e(b). Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1163 (9th Cir. 2009).

58. Equifax's failure to implement any automated data-integrity check comparing a reported balance against the corresponding credit limit before publishing a consumer report reflects the absence of reasonable procedures to assure maximum possible accuracy. The failure of such a basic comparison is objectively unreasonable under Safeco Ins. Co. of Am. v. Burr, 551 U.S. at 69, rendering Equifax's violation willful.

59. On information and belief, Equifax's internal consumer file on Plaintiff contains the complete and accurate balance and limit data as furnished by Capital One, and Equifax transmitted that data to third-party creditors reviewing Plaintiff's file. Equifax nonetheless published the inaccurate balance-exceeds-limit figure in Plaintiff's consumer disclosure without correction.

60. As a result of Equifax's willful and/or negligent violations of 15 U.S.C. § 1681e(b), Plaintiff is entitled to: (a) actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1); (b) statutory damages of not less than $100 and not more than $1,000 per

willful violation pursuant to 15 U.S.C. § 1681n(a)(1)(A); (c) punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and (d) costs of this action pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2).

## COUNT III

## Violation of 15 U.S.C. § 1681e(b) -- Materially Misleading Reporting (Deferment During Delinquency)

61. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

62. An item of credit information may be technically accurate yet still violate 15 U.S.C. § 1681e(b) if it creates a misleading impression of the consumer's creditworthiness or payment history. Gorman v. Wolpoff & Abramson, LLP, 584 F.3d at 1163.

63. Each of the eleven active Department of Education accounts in Plaintiff's August 22, 2025 Equifax disclosure carries Narrative Code 088 -- "Student Loan - Payment Deferred" -- for the months September 2024, May 2024, and January 2024. Those same accounts simultaneously carry escalating delinquency notations of 90 days, 120 days, 150 days, and 180 days past due in the payment history grids for months surrounding the deferment-coded periods.

64. The concurrent presentation of deferment coding alongside escalating delinquency notations, without any Actual Payment Amount data in any row of the 24-Month History, creates a materially misleading picture of Plaintiff's student loan payment status. A creditor reviewing this report cannot determine whether the delinquency notations arose

before, after, or in contradiction to the deferment periods, or whether the accounts were ever in a protected payment status that should have paused delinquency escalation.

65. Because Equifax withheld the Actual Payment Amount for every populated month across all eleven accounts, a reviewing creditor has no data with which to reconcile the deferment notations against the delinquency history. The result is a misleading impression that Plaintiff was simultaneously in deferment and accumulating delinquencies, with no information provided to permit evaluation of whether either characterization is accurate.

66. Equifax's failure to maintain and disclose the Actual Payment Amount data alongside the deferment and delinquency notations does not constitute maximum possible accuracy and violates 15 U.S.C. § 1681e(b).

67. As a result of Equifax's willful and/or negligent violations of 15 U.S.C. § 1681e(b), Plaintiff is entitled to: (a) actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1); (b) statutory damages of not less than $100 and not more than $1,000 per willful violation pursuant to 15 U.S.C. § 1681n(a)(1)(A); (c) punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and (d) costs of this action pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2).

## COUNT IV

## Violation of 15 U.S.C. § 1681i(a)(1)(A) -- Failure to Conduct Reasonable Reinvestigation

68. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

69. Section 1681i(a)(1)(A) of the FCRA requires that if the completeness or accuracy of any item of information contained in a consumer's file is disputed, and the consumer notifies the consumer reporting agency of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate within thirty days. Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 890 (9th Cir. 2010).

70. As evidenced by Narrative Code 022 -- "Consumer Disputes - Reinvestigation in Process" -- appearing on the Ally Financial account ending *4830, and Narrative Code 167 -- "Consumer Disputes After Resolution" -- appearing across all twenty-four rows of the 24-Month History tables for the Sallie Mae accounts ending *5825 and *7674, and also on the Ally Financial *4830 account, Plaintiff previously notified Equifax of disputes concerning information in his consumer file.

71. Despite receiving Plaintiff's disputes, Equifax failed to conduct a reasonable reinvestigation. The continued presence of Code 167, denoting that a consumer dispute was resolved by the data furnisher rather than independently verified, across every row of the Sallie Mae *5825 and *7674 account histories is consistent with Equifax having treated the furnisher's response as dispositive without independently evaluating whether the information was accurate. See Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997); Ghazaryan v. Equifax Info. Servs., LLC, 740 F. App'x 157, 158 (9th Cir. 2018) (a reasonable reinvestigation requires review and consideration of all relevant information submitted by the consumer, notification to the furnisher, and a prompt correction or deletion of inaccurate, incomplete, or unverifiable information).

72. As a result of Equifax's willful and/or negligent violations of 15 U.S.C. § 1681i(a)(1)(A), Plaintiff is entitled to: (a) actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1); (b) statutory damages of not less than $100 and not more than $1,000 per willful violation pursuant to 15 U.S.C. § 1681n(a)(1)(A); (c) punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and (d) costs of this action pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2).

## COUNT V

## Violation of 15 U.S.C. § 1681i(a)(5)(A) -- Failure to Delete or Modify Unverifiable Information

73. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

74. Section 1681i(a)(5)(A) of the FCRA provides that if, after a reinvestigation, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete the item or modify the item of information, as appropriate, based on the results of the reinvestigation.

75. Following Plaintiff's disputes of the Sallie Mae *5825 account, the Sallie Mae *7674 account, and the Ally Financial *4830 account, as evidenced by the dispute notation codes present in each account's history, Equifax was required either to verify the accuracy of the disputed information or to delete or modify it. The continued reporting of Code 167 on the Sallie Mae *5825 and *7674 accounts across every row of their 24-Month History tables indicates that Equifax accepted the furnisher's resolution without independently verifying the information and without taking appropriate corrective action.

76. On information and belief, information that Plaintiff disputed and that Equifax could not independently verify remained on Plaintiff's consumer report and in subsequent consumer reports furnished to third parties, in violation of 15 U.S.C. § 1681i(a)(5)(A).

77. As a result of Equifax's willful and/or negligent violations of 15 U.S.C. § 1681i(a)(5)(A), Plaintiff is entitled to: (a) actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1); (b) statutory damages of not less than $100 and not more than $1,000 per willful violation pursuant to 15 U.S.C. § 1681n(a)(1)(A); (c) punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and (d) costs of this action pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2).

## COUNT VI

## Violation of 15 U.S.C. § 1681i(c) -- Failure to Note Disputed Status in Subsequent Reports

78. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

79. Section 1681i(c) of the FCRA provides that whenever a statement of dispute is filed, the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer, and provide either the consumer's statement or a clear and accurate codification or summary thereof.

80. The presence of Narrative Code 167 on the Sallie Mae *5825 and *7674 accounts and Narrative Code 022 on the Ally Financial *4830 account confirms that Equifax acknowledged Plaintiff's disputes in its internal file. Equifax was therefore required to note disputed status in any consumer report furnished to third parties containing the disputed information.

81. On information and belief, Equifax furnished consumer reports to third parties containing information that Plaintiff had disputed, without clearly and accurately noting the disputed status in those reports in a manner that would apprise reviewing creditors that the information was the subject of an ongoing or unresolved consumer dispute, in violation of 15 U.S.C. § 1681i(c).

82. As a result of Equifax's willful and/or negligent violations of 15 U.S.C. § 1681i(c), Plaintiff is entitled to: (a) actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1); (b) statutory damages of not less than $100 and not more than $1,000 per willful violation pursuant to 15 U.S.C. § 1681n(a)(1)(A); (c) punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and (d) costs of this action pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2).

## VI.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Richkaard Verrier respectfully requests that this Court enter judgment in his favor and against Defendant Equifax Information Services LLC as follows:

(a) Judgment in favor of Plaintiff and against Defendant on all counts;

(b) Actual damages in an amount to be determined at trial, pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(c) Statutory damages of not less than $100 and not more than $1,000 for each willful violation, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

(d) Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

(e) Costs of this action pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

(f) Injunctive relief requiring Defendant to provide Plaintiff with a complete and corrected consumer file disclosure that clearly and accurately discloses all information in Plaintiff's file at the time of request, including all Actual Payment Amount fields, all Last Payment Date fields, and all other data fields withheld from the August 22, 2025 disclosure; and

(g) Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Richkaard Verrier

Richkaard Verrier

Pro Se Plaintiff

790 Willard St Apt 101

Quincy, MA 02169

Email: rverrier12@gmail.com

Date: August 13, 2026